IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESLEY ANN O., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18-CV-549-JFJ |
| v. | ) |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Lesley Ann O. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and ALJ's Decision

Plaintiff, then a 40-year-old female, applied for Title II benefits on December 18, 2015, alleging a disability onset date of September 1, 2015. R. 159-160. Plaintiff met the insured status requirements of the Act through March 30, 2016. R. 14. Plaintiff claimed she was unable to work due to ulcerative colitis, anxiety, right eye blindness, kidney problems, and joint pain. R. 187. Plaintiff's claim for benefits was denied initially on March 8, 2016, and on reconsideration on April 12, 2016. R. 87-91; 93-96. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on October 12, 2017. The ALJ then issued a decision on December 22, 2017, denying benefits and finding Plaintiff not disabled. The Appeals Council denied review, and Plaintiff appealed.

The ALJ found that Plaintiff had not engaged in substantial gainful activity "during the period from her alleged onset date of September 1, 2015 through her date last insured of March 30, 2016." R. 14. The ALJ found that Plaintiff had the following severe impairments: inflammatory arthritis, osteoarthritis of the right acromioclavicular (AC) joint with a type II acromion right shoulder and partial thickness tearing of the upper tendinous fibers, and obesity. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. Prior to making a step four

finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> lift or carry, push or pull ten pounds occasionally and less than ten pounds frequently. [Plaintiff] could sit for six hours out of an eight-hour day, and stand or walk a combined total of two hours out of an eight-hour day. [Plaintiff] could occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. She should have avoided all overhead reaching, but could frequently handle and finger with the bilateral upper extremities.

R. 17. At step four, the ALJ found Plaintiff unable to perform any of her past relevant work because it exceeded her RFC. R. 24. Plaintiff was 40 years old on her alleged onset date, which is defined as a younger individual. Based on testimony from the vocational expert, however, the ALJ found at step five that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.    Issues and Analysis**

Plaintiff raises three issues on appeal: (1) the ALJ failed to provide legitimate reasons for rejecting physical restrictions in the Medical Source Opinion of Erin Morgan, M.D.; (2) the ALJ improperly discounted Plaintiff's subjective complaints regarding pain in her hands and the need for frequent restroom breaks; and (3) the ALJ's RFC failed to include Plaintiff's alleged impairment regarding the need for restroom breaks. The second and third arguments substantially overlap and are addressed together below.

    **A.    The ALJ Reasonably Considered and Evaluated Dr. Morgan's Medical Source Opinion**

        **1.    Dr. Morgan's Opinion/ALJ's Decision**

On December 9, 2015, Dr. Morgan completed a Medical Source Opinion of Residual Functional Capacity as of September 30, 2015, opining that Plaintiff retained the ability to sit, stand, and/or walk a total of two to three hours of an eight-hour workday; that she could frequently

lift and/or carry less than ten pounds; that she could use her arms bilaterally less than two hours per eight-hour work day for reaching, pushing, and pulling; and that she could use her hands bilaterally less than two hours per eight-hour work day for grasping, handling, fingering, or feeling. R. 254. Dr. Morgan also indicated that Plaintiff "needs to rest as indicated above" due to pain and/or fatigue. *Id.* As the medical findings supporting these assessments, Dr. Morgan cited "[i]nflammatory polyarthropathy and chronic ulcerative colitis" and noted that "[b]oth [were] undergoing medical evaluation and treatment." *Id.*

The ALJ gave Dr. Morgan's opinion "no weight" because the "limitations she offered are not consistent with the medical treatment records available for the time-period through the date last insured." R. 23. The ALJ further reasoned:

> The form was apparently prepared by the claimant with the date of September 30, 2015 made a part of the caption. September 30, 2015 was the originally calculated date last insured. At the time of the completion of this statement on December 9, 2015, Dr. Morgan had seen the claimant only three times, all in September of that year. She had one follow up visit in February of 2016. This compressed time period is not a sufficient longitudinal record to support the limitations she offers and does not demonstrate the durational period necessary for the evaluation of such an impairment. As indicated by Dr. Morgan, the claimant was undergoing evaluation and treatment at the time of the December 2015 statement.

R. 23. Ultimately, the ALJ imposed an RFC that was less restrictive than Dr. Morgan's but more restrictive than agency physicians Kyle Boatman, M.D. and Walter Bell, M.D., whose opinions the ALJ gave "little weight." *See* R. 65-72, 74-81.[1]

### 2. Analysis

Plaintiff argues that the ALJ did not provide "valid or legitimate" reasons for rejecting Dr. Morgan's opinion. Specifically, Plaintiff contends that the ALJ relied exclusively on the short

---

[1] The ALJ found that Plaintiff was more limited than the agency opinions allowed, and discounted them in her favor. R. 23. Plaintiff does not challenge this finding.

duration of the treatment relationship in rejecting the opinion, in violation of *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion. *See* 20 C.F.R. § 404.1527(c). Those factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. *Id.* If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted). In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1301.

The Court concludes that the ALJ gave specific and legitimate reasons for giving Dr. Morgan's opinion no weight. First, the ALJ found the restrictions to be inconsistent with relevant medical records, which is an appropriate factor for consideration. Prior to discussing his opinion weight assignments, the ALJ thoroughly discussed all of Plaintiff's medical records, including Dr. Morgan and Alan Martin, M.D., the rheumatologist to whom Dr. Morgan referred Plaintiff. For example, during Plaintiff's September 4, 2015, visit with Dr. Morgan, bilateral hand swelling was noted without joint deformity and objective testing produced negative results. R. 18, 240. A subsequent visit with Dr. Morgan again showed some joint swelling, but improved range of

motion. R. 18, 239. A September 22, 2015, visit to Dr. Morgan showed better joint mobility with some pain. R. 19, 233. The ALJ discussed those visits and that testing performed by Dr. Martin yielded unremarkable results. R. 18-19, 262-263 (generalized hand tenderness with no clear inflammation; bilateral hand films normal), 280-281 (reports of tenderness with no inflammation; normal strength in upper and lower extremities; "inflammatory process most likely related to her ulcerative colitis, although has had past colectomy from this"), 283-284 (some finger joint tenderness without inflammation; normal strength in upper and lower extremities; "She continues to have joint pain that does seem out of proportion with exam findings."), 286-287 ("Exam today more consistent with fibromyalgia."). The ALJ also discussed medical records outside the relevant disability period and noted a thirteen-month gap in Plaintiff's treatment records where she did not receive any care from a primary care physician. Further, Plaintiff provided no records from a rheumatologist beyond January of 2016. Contrary to Plaintiff's argument, the ALJ identified specific inconsistencies between Dr. Morgan's restrictive opinion regarding Plaintiff's limitations and the objective medical evidence.

Second, the ALJ properly considered the short duration of the treatment relationship and the small number of total examinations in discounting Dr. Morgan's opinions. Generally, the "longer a treating source has treated [a claimant] and the more times [a claimant has] been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i). The ALJ's discussion of Dr. Morgan's examinations taking place within one month in September of 2015 was an appropriate consideration in weighing the treating physician's opinion. *See Branum v Barnhart*, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (affirming ALJ's rejection of treating source opinion based, in part, on ALJ's observation that physician had seen the claimant on "an infrequent basis").

6

Plaintiff's reliance on *Chapo*, 682 F.3d at 1291 is misplaced. *Chapo* held that an ALJ's rejection of a treating source's uncontradicted medical opinion based *solely* on the short duration of the treatment relationship was reversible error. *Id.* But *Chapo* also explained that such medical opinions may be dismissed if the ALJ's decision is "based on an evaluation of all the factors set out in the regulations." *Id.* Here, the ALJ made clear that he considered not only the length of relationship but also how well Dr. Morgan's opinion was supported and whether it was consistent with the medical evidence. Accordingly, no *Chapo* error occurred in the ALJ's treating physician analysis of Dr. Morgan.[2]

### B. The ALJ's RFC Findings and Consistency Analysis Are Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly discounted her subjective complaints regarding two distinct issues: (1) pain and difficulty using her hands; and (2) her need for fifteen to twenty restroom breaks per work day, due to the presence of a "j-pouch" that was inserted following her complete colectomy in 2012. Plaintiff further argues that the ALJ erred in failing to consider the need for restroom breaks, necessitated by the j-pouch, when formulating Plaintiff's RFC.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-

---

[2] In her reply brief, Plaintiff also argues that the ALJ should have considered the opinion of Nevin White, D.O., a primary care doctor Plaintiff began seeing in March of 2017, to establish the required 12-month duration requirement. ECF No. 18 at 2. The Court need not address arguments raised for the first time in a reply brief. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."). Further, the ALJ clearly considered and discussed Plaintiff's treatment by Dr. White and others after the date last insured, including discussing a significant gap in treatment between Dr. Martin and Dr. White. The Court finds no error in the ALJ's discussion of the durational requirement and finds this conclusion is supported by substantial evidence. In addition, later treatment notes dated June 22, 2017, indicate there are no "objective signs of inflammatory arthritis, [Plaintiff] had previously seen Dr. Alan Martin in 2015/16 and workup there as well was totally unremarkable." R. 315.

3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3). Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*[3]

The Court finds no error in the ALJ's consistency analysis or the ALJ's omission of restroom break limitations in the RFC. The ALJ dedicated a significant portion of his opinion to explaining reasons for finding Plaintiff's subjective complaints of disabling limitations

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

inconsistent with other evidence in the record. R. 21-24. All of those reasons are linked to discrepancies between Plaintiff's subjective claims and contradictory information in the objective medical records. Regarding restroom breaks, the ALJ noted the absence of any report to Dr. Morgan of frequent bowel movements or limitations on daily life activities caused by frequent bowel movements. R. 22. The ALJ also noted that "toileting issues" were not reported as a reason Plaintiff quit her previous employment and were never relayed to her treating physicians as a reason for being unable to work. R. 22. Regarding pain and difficulty using her hands, the ALJ concluded that certain medications or treatment could be expected to relieve any inflammatory process. R. 22. The ALJ noted that, despite Plaintiff's allegations of severe impairments requiring prescription medication, the record reflects at least a one-year gap in treatment from any primary care physician, and the record does not contain any treatment from a rheumatologist beyond January of 2016. R. 22-23. The ALJ also noted Plaintiff failed to return a function report despite many requests, which made assessing her subjective complaints "difficult" and reduced her credibility. R. 23.

The ALJ made more than adequate credibility findings and linked those findings to substantial evidence in the record. *See Thompson v. Berryhill*, 685 F. App'x 659, 664 (10th Cir. 2017) (where ALJ evaluates a claimant's subjective complaints and explains evidence he relies on, "[n]othing more is required" for a consistency analysis). For the same reasons, the Court finds no error in omitting the need for frequent restroom breaks from the RFC. *See generally Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009) (explaining that consistency analysis and RFC are inherently intertwined). Accordingly, the Court concludes that the ALJ committed no error in his consistency analysis of Plaintiff's subjective complaints, and that she retained the RFC to perform a reduced range of sedentary work.

9

## IV. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 8th day of January, 2020.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**